### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA CHEMIJ, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | No. 11-4106 |
| Defendant. | : | |

### MEMORANDUM

**Schiller, J.**                                                                               **June 11, 2012**

In December 2005, Plaintiff Cynthia Chemij was injured when a school bus collided with her car. She sued the school district and eventually settled her claim. She also claimed underinsured motorist ("UIM") benefits from Defendant Allstate Insurance Company ("Allstate"). The parties were unable to reach a settlement, and the claim proceeded to arbitration. The arbitrators awarded Chemij a net sum of $225,000, which Allstate promptly paid. Chemij then sued Allstate for bad faith under Pennsylvania law. Currently before the Court are the parties' cross-motions for summary judgment. For the following reasons, the Court denies Chemij's motion and grants Allstate's motion.

## I.    BACKGROUND

### A.    The Accident

On December 13, 2005, a school bus operated by the Pennsbury School District ("Pennsbury") made a wide turn and struck Chemij's car. (Def.'s Statement of Undisputed Facts in Supp. of its Mot. for Summ. J. [Def.'s SOF] ¶ 1.)[1] Chemij went to the emergency room the next day for injuries sustained in the accident. (*Id.* ¶ 2; Def.'s Mot. for Summ. J. Ex. 1 [Resps. to Reqs. for

---

[1] Chemij has admitted Allstate's Statement of Undisputed Facts in its entirety.

Admis.] ¶ 3.) In the years that followed, she was treated for injuries to her neck and arm. (Def.'s SOF ¶ 3.)

Within two weeks of the accident, Chemij returned to her job as an accounting clerk/secretary for Pennsbury. (*Id.* ¶ 4; Resps. to Reqs. for Admis. ¶ 7.) In April 2006, she applied for a position in Pennsbury's computer center but was not hired. (Def.'s SOF ¶¶ 5-6.) Chemij continued working as an accounting clerk/secretary until May 22, 2006, when she took a medical leave of absence. (*Id.* ¶ 6.) In August 2006, she underwent a discectomy and fusion surgery on her neck. (*Id.* ¶ 7.) Chemij returned to work as an accounting clerk/secretary in January 2007 and worked full-time until August 2008, when she took a second medical leave of absence. (*Id.* ¶ 8.) She has not worked since, although she attempted to negotiate a return to employment with Pennsbury in a managerial capacity in 2009. (*Id.* ¶ 11.)

### B.     Chemij's Claim Against Pennsbury

After the accident, Chemij sought tort compensation from Pennsbury. (*Id.* ¶ 12.) While Pennsbury's insurance policy limit was $1 million, its potential liability was statutorily capped at $500,000. (*Id.*) Pennsbury disputed the extent of Chemij's damages, and in September 2007, Chemij sued Pennsbury in the Bucks County Court of Common Pleas. (*Id.* ¶ 13.) The parties engaged in substantial discovery during the lawsuit, including depositions and expert reports. (*Id.* ¶¶ 14-16.) The parties' experts disputed the extent of Chemij's injuries and whether she was employable. (*Id.* ¶¶ 17, 20.) Several of Chemij's colleagues from Pennsbury testified that Chemij seemed to be exaggerating the extent of her disability. (*Id.* ¶ 14.) In May 2009, following mediation, Chemij agreed to settle her case against Pennsbury for $375,000. (*Id.* ¶ 23.) Pennsbury's insurance carrier had previously offered Chemij $150,000 to settle her claim and estimated the maximum value of her

claim to be $400,000. (*Id.* ¶ 24.) At the request of Chemij's lawyer, Michael van der Veen, Allstate waived its right of subrogation and consented to the settlement. (*Id.* ¶ 25.)

### C.    Chemij's UIM Claim

On January 12, 2007, before Chemij sued Pennsbury, van der Veen sent a letter notifying Allstate that Chemij intended to make a UIM claim. (*Id.* ¶ 26.) The letter did not include a demand or any details about the claim; it merely requested that Allstate assign an adjuster to the claim and provide the adjuster's contact information. (*Id.* ¶ 27.) Allstate assigned Martha Ruggero to handle the claim. (*Id.* ¶ 28.) Ruggero sent a letter dated January 23, 2007 identifying herself to van der Veen and inquiring about the status of the Pennsbury case, but received no response. (*Id.* ¶¶ 28-29; Def.'s Mot. for Summ. J. Ex. 22 [1/23/07 Letter].) Instead, van der Veen sent a letter dated November 7, 2007 to Teressa Chrietien, a first-party med pay adjuster in Allstate's Dallas office, requesting a certified copy of Chemij's UIM policy. (Def.'s SOF ¶¶ 30-31; Def.'s Mot. for Summ. J. Ex. 23 [11/7/07 Letter].) On December 4, 2007, Allstate sent van der Veen a copy of the declarations page showing Chemij's UIM limits, but not a copy of the full policy as requested. (Def.'s SOF ¶ 36.) As discussed below, van der Veen did not renew his request for the full policy until February 2011, over three years later. (*Id.* ¶ 126.)

Also in November 2007, van der Veen appointed Geoffrey Gompers as Chemij's arbitrator. (*Id.* ¶ 31.) On December 7, 2007, Ruggero spoke to van der Veen by telephone and advised him that she needed information on Pennsbury's coverage limits and Chemij's medical treatments and expenses in order to evaluate the UIM claim. (*Id.* ¶ 38.) Ruggero offered to review the claim before sending it to counsel, but van der Veen requested that Allstate refer the case to counsel to begin the arbitration process. (*Id.* ¶¶ 39-40.) Allstate assigned the matter to attorney Thomas Blackburn. (*Id.*

3

¶ 43.) By letter dated December 19, 2007, van der Veen sent some of Chemij's medical records to Ruggero and stated, "We are also waiting for additional medical records, reports, and bills. Once received, these documents will be forwarded to you." (*Id.* ¶¶ 44-45; Def.'s Mot. for Summ. J. Ex. 32 [12/19/07 Letter].)

On January 4, 2008, Blackburn notified van der Veen that he had appointed James Palmer as Allstate's arbitrator and requested that van der Veen contact his paralegal to schedule Chemij's statement under oath. (Def.'s SOF ¶¶ 48-49.) However, van der Veen did not suggest any dates for Chemij's statement under oath until June or July of 2008. (*Id.* ¶ 50.) The statement under oath was originally scheduled for September 24, 2008, but van der Veen canceled it. (*Id.* ¶¶ 51-52.) Blackburn's paralegal asked van der Veen to provide new dates but got no response. (*Id.* ¶ 54.) Blackburn wrote to van der Veen directly in February 2009 and reminded him of the need to schedule a statement under oath. (*Id.* ¶ 55.) Chemij's statement under oath was ultimately taken on July 28, 2009. (*Id.* ¶ 61.)

**D.    Evaluation of Claim and Settlement Discussions**

At Ruggero's request, van der Veen forwarded the third-party expert reports from the Pennsbury litigation on July 1, 2009. (*Id.* ¶¶ 66-67.) On July 28, 2009, van der Veen sent Blackburn the records he had promised in his December 2007 letter to Ruggero. (*Id.* ¶ 62.) Blackburn did not receive the records until after Chemij's statement under oath. (*Id.* ¶ 63.) Following the statement under oath, Blackburn requested authorizations for the release of additional medical records and received the authorizations on September 30, 2009. (*Id.* ¶¶ 64-65.) Allstate did not retain any independent experts to evaluate Chemij's medical condition. (Pl.'s Statement of Undisputed Facts [Pl.'s SOF] ¶ 40.)

4

In early December 2009, Blackburn forwarded the records he had gathered to Ruggero. (Def.'s SOF ¶ 69.) Ruggero analyzed the records and ran the facts of the claim through a computer claim evaluation system called Colossus. (*Id.* ¶ 70.) While Colossus valued Chemij's total damages in the range of $29,760 to $37,200, Ruggero estimated that Chemij's damages were actually in the range of $585,000 to $600,000. (*Id.* ¶¶ 70, 72.) Taking into account a credit of $500,000 from Pennsbury's coverage limit, Ruggero's evaluation suggested that Allstate should pay $85,000 to $100,000 to Chemij in UIM coverage. (*Id.* ¶ 71.) Ruggero forwarded the report to an evaluation consultant, Cecelia Joyce, who determined that Ruggero had neglected to enter certain medical information into Colossus. (*Id.* ¶ 73.) Joyce re-ran the claim through Colossus and obtained a revised range of $77,120 to $96,400, still less than Ruggero's manual assessment. (*Id.* ¶¶ 73-74.)

On January 14, 2010, Joyce authorized Ruggero to settle the claim for $100,000. (*Id.* ¶ 75.) Ruggero, in turn, authorized Blackburn to settle the claim for an amount between $85,000 and $100,000. (*Id.* ¶ 76.) On January 20, 2010, Blackburn offered van der Veen a settlement of $85,000. (*Id.* ¶ 77.) Van der Veen countered by reducing his initial demand of $300,000—the UIM policy limit—to $275,000. (*Id.* ¶ 78.) Blackburn raised his offer to $95,000, which van der Veen rejected. (*Id.* ¶¶ 79-80.) At that point, the negotiations broke down and van der Veen did not make a counter-demand. (*Id.* ¶ 80.)

In late August 2010, while the parties were awaiting court appointment of a neutral arbitrator, Ruggero received additional medical records. (*Id.* ¶ 82.) In light of this new information, Joyce granted Ruggero authority for an additional $25,000 on December 2, 2010. (*Id.* ¶ 83.) Blackburn offered van der Veen $115,000, and van der Veen reduced his demand to $270,000. (*Id.* ¶ 85.) In a letter dated February 3, 2011, however, van der Veen reinstated his $300,000 demand.

(*Id.* ¶ 86.) Blackburn made a final offer of $125,000 on February 10, 2011, but the parties did not reach a settlement. (*Id.* ¶¶ 87-88.) The case proceeded to arbitration. (*Id.* ¶ 88.)

### E.   Appointment of Neutral Arbitrator

By letter dated January 23, 2008, Gompers, Chemij's arbitrator, proposed three Philadelphia lawyers as neutral arbitrators. (*Id.* ¶ 89.) In his response dated February 22, 2008, Palmer, Allstate's arbitrator, suggested three Bucks County lawyers instead because the arbitration was to take place in Bucks County. (*Id.* ¶ 90.) Van der Veen rejected Palmer's proposed arbitrators and named three other arbitrators for Gompers to propose, two of whom were ineligible to serve as arbitrators on a private matter because they were sitting district justices in Bucks County. (*Id.* ¶¶ 91, 93.) Gompers wrote to Palmer on May 23 and June 16, 2008, proposing those arbitrators. (*Id.* ¶ 92.) Palmer did not respond until December 24, 2008, when he sent a letter to Gompers proposing three other arbitrators. (*Id.* ¶ 94.) In the meantime, Gompers had twice written to van der Veen in the summer of 2008 to complain about Palmer's lack of responsiveness and to suggest that van der Veen file a petition to appoint a neutral arbitrator, but there is no evidence that van der Veen took any action as a result. (*Id.* ¶ 95; *see also* Def.'s Mot. for Summ. J. Ex. 63 [7/23/08 and 8/28/08 Letters].) Palmer received no response to his December 24, 2008 letter, although Gompers wrote to van der Veen three times in late 2008 and early 2009 seeking his input on Palmer's proposed arbitrators. (Def.'s SOF ¶ 96; Def.'s Mot. for Summ. J. Ex. 64 [12/30/08, 1/13/09, and 2/6/09 Letters].) Palmer renewed his proposal on March 20, 2009, and again Gompers wrote to van der Veen three times before van der Veen took any action. (*Id.* ¶¶ 97-98.) Van der Veen wrote back on April 16, 2009 and instructed Gompers to put the matter "on hold until further notice." (*Id.* ¶ 100; Def.'s Mot. for Summ. J. Ex. 40 [4/16/09 Letter].) In October 2009, Blackburn and van der Veen spoke by

6

telephone about potential neutral arbitrators but could not reach agreement. (Def.'s SOF ¶¶ 101-02.)

> The UIM policy provided:
>
> The arbitrators will be selected as follows: You select one arbitrator and we select another. The two arbitrators will select a third. If they cannot agree on a third arbitrator within 30 days, the judge of record in the county in which your address shown on the declarations page is located will appoint the third arbitrator.

(Pl.'s SOF ¶ 12.) Blackburn was aware of this policy provision but did not seek court appointment of a neutral arbitrator after the parties failed to agree on an arbitrator within thirty days, nor did he inform Chemij's counsel of the policy provision. (*Id.* ¶¶ 13-14.) Chemij claims van der Veen "was unaware as to what Plaintiff's rights were in obtaining the appointment of a neutral third arbitrator" since he did not have a copy of the UIM policy. (*Id.* ¶ 17.) Nonetheless, in January 2010, prior to receiving a copy of the policy, van der Veen filed a petition to appoint a neutral arbitrator in the Bucks County Court of Common Pleas. (Def.'s SOF ¶ 104; Def.'s Mot. for Summ. J. Ex. 68 [Pet. for Appointment of an Arbitrator].)

The judge signed a rule setting March 1, 2010 as the date for Allstate's response, but van der Veen failed to serve the rule on Blackburn. (Def.'s SOF ¶¶ 105-06.) On April 23, 2010, van der Veen filed a motion to extend the rule return date, alleging that he had not received a copy of the original rule from the prothonotary. (*Id.* ¶ 107.) The judge extended the return date to June 7, 2010. (*Id.* ¶ 108.) In its response filed on that date, Allstate disputed van der Veen's characterization of the facts and requested that the court deny the petition or, alternatively, appoint a neutral arbitrator. (*Id.* ¶ 110; Def.'s Mot. for Summ. J. Ex. 72 [Resp. to Pet. for Appointment of an Arbitrator].) On August 9, 2010, van der Veen filed a praecipe to have the petition decided, which the prothonotary returned for failure to comply with local rules. (Def.'s SOF ¶ 114.) Van der Veen refiled the

praecipe on August 23, 2010, requesting oral argument, and filed an identical praecipe on September 13, 2010. (*Id.* ¶¶ 115-16; Def.'s Mot. for Summ. J. Ex. 75 [8/23/10 Praecipe]; Def.'s Mot. for Summ. J. Ex. 76 [9/13/10 Praecipe].) On September 16, 2010, Blackburn wrote a letter to the court suggesting that it appoint an arbitrator without oral argument. (Def.'s SOF ¶ 117.) By order dated October 15, 2010, the court appointed Barbara Lyons—who had been proposed by Allstate and rejected by van der Veen nearly two years earlier—as the neutral arbitrator. (*Id.* ¶¶ 118-19.)

### F.    Outcome of Arbitration

The arbitration was originally scheduled for December 10, 2010, but was rescheduled for January 21, 2011 by agreement of the parties. (*Id.* ¶ 120.) Blackburn inadvertently failed to enter the new date in his calendar and believed that the arbitration had not been set for that date. (*Id.*) When Blackburn realized his mistake two days before the arbitration date, he requested a continuance, which Lyons granted over Chemij's objection. (*Id.* ¶¶ 121-22.) The arbitration took place on February 11, 2011. (*Id.* ¶ 123.)

Prior to the arbitration, van der Veen submitted an arbitration memorandum asking the arbitrators to award bad faith damages in addition to damages for personal injury under Chemij's UIM coverage. (*Id.* ¶ 124.) Blackburn objected on the ground that the policy expressly prohibited arbitrators from considering claims of bad faith, and van der Veen reiterated his request—last made in November 2007—for a copy of the full policy. (*Id.* ¶¶ 125-26; Def.'s Mot. for Summ. J. Ex. 83 [2/5/11 Email].) Allstate provided the policy to van der Veen on an expedited basis. (Def.'s SOF ¶ 127.) The arbitration panel unanimously awarded Chemij $725,000 in damages. (*Id.* ¶¶ 129-30.) After subtracting the $500,000 credit from Pennsbury's coverage limit, Allstate issued a check on

8

February 25, 2011 for the net award of $225,000. (*Id.* ¶ 131.)

G.     **Bad Faith Claim**

Chemij filed a petition for award of bad faith damages in the Bucks County Court of Common Pleas on June 2, 2011, and Allstate removed to this Court on June 23, 2011. The parties filed cross-motions for summary judgment on March 22, 2012.

II.     **STANDARD OF REVIEW**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Spence v. ESAB Group, Inc.*, 623 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk.*

9

*Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). A court must apply the same standards to cross-motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

## III.   DISCUSSION

Chemij seeks damages under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, which permits a court to award interest, punitive damages, costs, and attorneys' fees upon a finding that an insurer has acted in bad faith toward an insured. To prevail on a bad faith claim, the insured must show that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim. *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 505 (3d Cir. 2004) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Failure to pay a claim constitutes bad faith only if the insurer has a dishonest purpose. *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Although the refusal to pay need not be fraudulent, mere negligence or bad judgment is insufficient. *Id.*

The burden rests with the insured to show bad faith by clear and convincing evidence. *Id.* To satisfy this standard, the insured must present evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Bostick v. ITT Hartford Grp., Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999). Therefore, "the insured's burden in opposing a summary judgment motion brought by the insurer is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Babayan*, 430 F.3d at 137 (internal quotation marks omitted). Furthermore, since the essence of a bad faith claim is the denial of benefits without good reason,

10

an insurer is entitled to summary judgment if it can show a reasonable basis for its actions. *See Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 n.3 (E.D. Pa. 1998), *aff'd*, 172 F.3d 860 (3d Cir. 1998).

Chemij argues that Allstate acted in bad faith by prolonging the evaluation and arbitration of her UIM claim "for no apparent reason other than to retain the time value" of the amount owed to her under the policy. (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 2.) Although Chemij identifies numerous alleged acts of bad faith by Allstate, she does not meet her burden of proving bad faith by clear and convincing evidence.

### A.    Evaluation of Claim

Chemij contends that Allstate failed to investigate her claim promptly and thoroughly. The evidence in the record, however, suggests that much of the delay in investigating the claim was attributable to Chemij's own counsel. After notifying Allstate of the claim in January 2007, van der Veen provided no further information for ten months. He sent some of Chemij's medical records to Ruggero in December 2007 and stated that additional documents would be forthcoming, but he did not send the additional documents until July 2009. Chemij alleges that Blackburn also received a packet of mediation materials from the Pennsbury matter in June 2009, yet points to no evidence supporting this assertion. Allstate attempted to schedule Chemij's statement under oath in January 2008, shortly after receiving the initial set of medical records, but the statement under oath was not taken until July 2009 due to van der Veen's lack of cooperation.

Chemij also argues that by July or August 2009, Allstate had all the information it needed to evaluate her claim and should have made an offer within thirty days. In fact, Allstate continued to collect information after that point in time. Blackburn received authorizations for release of

medical records on September 30, 2009 and forwarded the records he obtained to Ruggero in early December 2009. Ruggero then evaluated the claim manually and through Collosus. Allstate made its initial offer to Chemij on January 20, 2010.

Chemij further argues that the use of Collosus to evaluate her claim was clearly inappropriate and was intended to delay making a payment under the policy. Allstate's offer to Chemij was based solely on Ruggero's manual evaluation, and Chemij offers no evidence that the use of Collosus actually delayed her claim. Under the circumstances, the length of time Allstate took to investigate and evaluate the claim before making an offer does not constitute bad faith.

**B.     Arbitration of Claim**

Chemij asserts that Allstate acted in bad faith by sending van der Veen a copy of the declarations page in December 2007 rather than the full policy as requested. Because the policy sets forth the procedure for court appointment of a neutral arbitrator, Chemij contends that Allstate's failure to send the policy prevented the claim from proceeding to arbitration. However, there is no evidence that Allstate deliberately refused to provide the policy or that the absence of the policy delayed the arbitration. Notably, van der Veen did not renew his request for the full policy until February 2011, at which point Allstate sent the policy on an expedited basis.

Chemij also suggests that Blackburn should have informed van der Veen of the relevant policy provision or petitioned the court for appointment of a neutral arbitrator himself. There is no evidence that Blackburn had reason to believe van der Veen, an experienced lawyer, was unaware of the procedure for seeking court appointment of a neutral arbitrator. Indeed, van der Veen's own arbitrator repeatedly suggested that he file a petition in 2008, and van der Veen did so in January 2010, before he had received a copy of the policy. Moreover, nothing in the policy language

12

required Allstate to file a petition if van der Veen did not. Van der Veen's own conduct was also to blame for the delay in appointing an arbitrator, as evidenced by the fact that the arbitrator who was ultimately appointed had been proposed by Allstate and rejected by van der Veen nearly two years earlier. Chemij has not shown that any of Allstate's conduct was in bad faith.

IV.    **CONCLUSION**

As Chemij has not presented clear and convincing evidence of bad faith by Allstate, the Court will deny Chemij's motion for summary judgment and grant Allstate's motion for summary judgment. An Order consistent with this Memorandum will be docketed separately.